296 P.2d 274

Ella H. BEEZLEY, Plaintiff and Respondent,

v.

William L. BEEZLEY, Defendant and Appellant,

Elias HANSEN, Third Party Defendant.

No. 8411.

Supreme Court of Utah.

April 25, 1956.

Appeal from a judgment awarding respondent a divorce and a one-half interest in the El Vigo Apartment House and declaring that appellant had no interest therein and awarding to appellant the El Dumpo Apartment House which stood in the joint names of appellant and respondent.

The pleadings are numerous and involved. Respondent and appellant were married in 1932. No children have been born as issue of the marriage. Respondent is the daughter of third party defendant. A third party complaint was filed by appellant against third party defendant to require an accounting by said third party defendant of rents and profits from the operation of the Monterey and the El Vigo Apartment Houses.

The evidence discloses that all three of the parties have been more or less interested in real estate transactions during the past 19 or 20 years.

The El Vigo Apartment House was purchased by third party defendant in July, 1945. Part of the purchase price of the El Vigo was received from the sale of the Monterey Apartment House, which was purchased by respondent and third party defendant, the title to the Monterey having been taken in the name of respondent.

W. R. Hutchinson, Jr., Salt Lake City, for appellant.

J. Grant Iverson, Salt Lake City, for respondent.

WORTHEN, Justice.

Appellant concedes that third party defendant owned an undivided one-half interest in the Monterey Apartment House and concedes his ownership of a one-half inter-

est in the El Vigo Apartment House, but alleged and contended that he owned a one-fourth interest therein by virtue of a verbal agreement and understanding entered into in 1936, wherein it was agreed that respondent and appellant would become joint partners and devote their time and services and acquire income-bearing real property and buy and sell and otherwise deal in the same, and that they should share equally in the venture as joint tenants.

On the 8th day of May, 1952, this action was commenced for divorce on the ground of mental cruelty. Respondent alleged that she was then the owner of an undivided one-half interest in the El Vigo Apartment House, and that her father owned the other half interest; she further alleged that defendant had contributed nothing toward the purchase price of said apartment house. She alleged that she and defendant owned an automobile. Plaintiff asked for a decree of divorce; for the automobile and that the court decree that the undivided one-half interest owned by her in the El Vigo Apartment House be decreed the sole and separate property of plaintiff and that defendant be decreed to have no interest therein. The El Dumpo Apartment House was not mentioned in the complaint, nor did plaintiff ask that the court make any decree or order as to the same.

A petition for a restraining order was filed by plaintiff the day the complaint was filed, alleging that she was fearful for her safety as a result of defendant becoming intoxicated. The court ordered defendant to appear and show cause on May 13th and ordered defendant not to go to the apartment occupied by plaintiff until the order could be heard on May 13, 1952.

By stipulation on May 22 defendant's time to plead was extended to June 27 and on June 13, 1952, the time was extended to September 25, 1952, and upon stipulation of the parties the court, on June 14, dismissed the petition and restraining order on file; on September 8 the time was extended to December 15, 1952; on December 15, 1952, the time was extended to February 15, 1953.

On February 16, 1953, defendant filed a motion to dismiss plaintiff's action for failure to allege a cause of action.

On July 17, 1953, defendant filed an Answer and Counterclaim and on September 22, 1953, he filed his Amended Answer and Counterclaim wherein he pleaded that the cruelty complained of in plaintiff's complaint had been condoned; that "ever since plaintiff filed the action the parties had continued to cohabitate as husband and wife." Defendant admitted that plaintiff's father, Elias Hansen, owned an undivided one-half interest in the El Vigo Apartment House and denied that plaintiff owned the other one-half interest, but that he owned an undivided one-fourth interest by reason of the partnership agreement herein mentioned.

Defendant obtained leave and filed a third party complaint against the father of plaintiff, Elias Hansen, wherein he alleged his ownership of an undivided one-fourth interest in both the Monterey and El Vigo

Apartment Houses and demanded that said Elias Hansen be required to render an accounting of the income of the said apartment houses.

The plaintiff filed a Supplemental Complaint on February 9, 1954, and an Amended Supplemental Complaint on the 19th day of February, 1954, wherein plaintiff alleged that the defendant fraudulently induced plaintiff to resume cohabitation upon the representation that he desired to effect a reconciliation; that his purpose was not to effect a reconciliation with plaintiff, but to obtain an interest in certain real property belonging to plaintiff and her father. Plaintiff alleged that since the filing of the complaint and up to the date of the filing of the Amended Supplemental Complaint the defendant had continued to treat plaintiff cruelly. That defendant has continuously since the action was filed and particularly since about the 15th day of July, 1953, harassed, annoyed and embarrassed the plaintiff by filing actions against the father of plaintiff, Elias Hansen, by provoking quarrels and disagreements with plaintiff and by asking unnecessary embarrassing questions of plaintiff while taking her deposition.

The trial court heard the testimony and found that for several years prior to the filing of the complaint defendant was addicted to the use of intoxicating liquors and particularly while under the influence of intoxicating liquor used vile and abusive language to and concerning the plaintiff.

That during said period of time the plaintiff was operating an apartment house; that while under the influence of intoxicating liquor the defendant was loud and boisterous and disturbed the tenants of the apartment house several nights each week until the early hours of the morning and thus interfered with the operations of said apartment house. That in the month of August, 1952, the defendant represented to the plaintiff that he desired to effect a reconciliation with the plaintiff and agreed to effect a reconciliation with the plaintiff and agreed to discontinue the use of intoxicating liquors. That thereafter defendant discontinued the use of intoxicating liquor. That relying upon said representation the plaintiff for short periods of time between the month of August, 1952, and the month of July, 1953, cohabited with the defendant, as husband and wife. That in the month of July, 1953, the defendant informed plaintiff that he would further attempt to work out a reconciliation *only upon the condition* that plaintiff *deed to the defendant one-half of her interest in the apartment house* known as El Vigo, and upon the further condition that the plaintiff effect the removal from said apartment house of the father of plaintiff, Elias Hansen. The court further found that thereafter the defendant treated the plaintiff cruelly, causing her great mental distress and suffering by harassing, annoying and embarrassing the plaintiff, by provoking quarrels and disagreements with the plaintiff and by presenting embarrassing questions to plaintiff at the taking of her

deposition and by insisting upon details of the acts of plaintiff and defendant which defendant had set up as constituting condonation.

■ Appellant contends that the court erred in granting respondent a divorce. That any cruelty constituting a cause of action was condoned by respondent. With this contention we cannot agree.

The complaint alleged as grounds for divorce that "defendant has treated the plaintiff cruelly, causing her great mental distress." It is true that the petition for restraining order specifically mentioned defendant's becoming intoxicated. It likewise appeared from the evidence that the use of intoxicating liquor was the underlying cause for defendant's cruelty, but it appears that the court's finding of cruelty subsequent to the claimed condonation is amply supported by the evidence. By supplemental complaint plaintiff charged defendant with cruel treatment after the period of condonation, and with a design to obtain an interest in plaintiff's ownership in the El Vigo Apartment House. Evidence discloses defendant demanded one-half of plaintiff's interest in the El Vigo Apartment House and that Elias Hansen be edged out of his own property so that defendant could enjoy it.

We believe that the evidence warrants the conclusion that had defendant, as a condition of the proposed reconciliation, demanded that plaintiff convey to defendant a one-fourth interest in the El Vigo Apartment House and effect the removal of her father, Elias Hansen, therefrom there would have been no attempted reconciliation. The evidence leaves doubt as to any good faith or honest intention on the part of appellant to work out a bona fide reconciliation. It appears from the record that defendant accused his wife, after the attempted reconciliation failed, of conduct reasonably calculated to constitute an accusation of immoral conduct.

Our holding here is in accordance with the statement expressed in 17 Am.Jur. Sec. 213, pages 258-9:

"Revival of Condoned Offenses.— Condonation of the violation of the marital duties and obligations is conditioned on the future good conduct of the offending spouse, and a subsequent offense on his or her part revokes or nullifies the condonation and revives the original offense as a cause for divorce. In other words, condonation ceases to be a defense to a divorce suit where the condoned offense is repeated. The general rule is that to constitute a revival of the condoned offense, the offending spouse need not be guilty of the same character or degree of offense as that condoned; any misconduct is sufficient which indicates that the condonation was not accepted in good faith and upon the reasonable conditions implied. While there is some authority to the effect that to constitute a revival of the condoned offense the subsequent offense must be one of which the court

will take cognizance, most courts agree that subsequent misconduct which will revive a condoned offense need not be of the same kind as the misconduct which was condoned; any subsequent misconduct which indicates that the condonation was not accepted in good faith and upon the reasonable conditions implied is sufficient. Generally, it seems that condonation may be forfeited by subsequent conduct which may be of a slighter nature than would warrant the granting of a decree of divorce. In other words, acts which do not in themselves constitute a ground of divorce, may, nevertheless, constitute a breach of the condition of condonation. * * *"

■ This court has already held in the case of MacDonald v. MacDonald, 120 Utah 573, at page 577, 236 P.2d 1066, at page 1068:

"* * * where the defendant's misconduct is resumed, the law permits the injured party to assert all the prior misconduct, as well as that occurring subsequent to the condonation. (Citing cases.)"

■■ The finding of the trial court that defendant had contributed nothing toward the purchase price of the El Vigo Apartment House, that plaintiff and defendant did not enter into a partnership agreement, and that defendant has no interest and has never had an interest of any kind in said apartment house, is amply supported by the evidence, even though conflicting. Therefore, in accord with the holdings of this court, that the judgment of the trial court will not be disturbed, unless the evidence clearly preponderates against its findings; or there has been a plain abuse of discretion, or where manifest injustice or inequity is present,[1] we affirm the court's ruling in awarding to respondent the undivided one-half interest in the El Vigo Apartment House.

■ Nor do we find that the trial court erred in awarding plaintiff's interest in the "El Dumpo" Apartment House which was owned by appellant and respondent as joint tenants to appellant. In fact, appellant testified that he purchased the property known as the Harrison Avenue property and that he had respondent's name put on the deed and that in January, 1946, the parties under their arrangement sold the Harrison Avenue property, paid the balance of a mortgage they had executed against said property and purchased the El Dumpo Apartment House and assumed a purchase contract thereon which defendant has paid. We are not able to understand the appellant's charge of error unless it is that appellant cannot claim the "El Dumpo" Apartment House which stands in the joint names of appellant and respondent, and be consistent in his contention that they are partners in "El Dumpo" Apartment House and

---

1. Anderson v. Anderson, 104 Utah 104, 138 P.2d 252, Allen v. Allen, 109 Utah 99, 165 P.2d 872, MacDonald v. MacDonald, supra.

in respondent's interest in "El Vigo" Apartment House. Respondent in her brief joined with appellant in urging that the court should not have distributed it to appellant in its entirety. Respondent did not cross appeal.

Judgment affirmed. Costs to respondent.

McDONOUGH, C. J., and CROCKETT and WADE, JJ., concur.

HENRIOD, Justice (concurring in the result).

I concur in the result, but feel that certain of the details of the litigants' domestic life might well have been omitted, such details not being necessary to our decision in this case, and of no concern to others.

Henriod and Worthen, JJ., dissented.